# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-1678V

| | |
|---|---|
| AMY GRAY,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br>Filed: August 18, 2025 |

*Jonathan Joseph Svitak*, Shannon Law Group, Woodridge, IL, for Petitioner.

*Dorian Hurley*, U.S. Department of Justice, Washington, DC, for Respondent.

### RULING ON ENTITLEMENT[1]

On August 9, 2021, Amy Gray filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*, which she amended on August 19, 2022.[2] (the "Vaccine Act"). Petitioner alleges that she suffered a left shoulder injury related to vaccine administration ("SIRVA") resulting from an influenza ("flu") vaccine received on October 7, 2020. Amended Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

Respondent argued that Petitioner was not entitled to compensation (ECF No. 43), and the parties have now fully briefed entitlement (ECF Nos. 45, 47, 48). For the reasons

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

discussed below, I find that record evidence preponderantly establishes that the onset of Petitioner's shoulder pain occurred within 48 hours of vaccination, her symptoms continued for more than six months, and that she has satisfied the remaining requirements for entitlement.

### I.     Relevant Factual History

This ruling contains only a brief overview of facts most relevant to the parties' dispute.

#### A.  Medical Records

On October 7, 2020, Petitioner received a flu vaccine in her left deltoid. Exs. 7, 8. Just over a month later (November 17, 2020), Petitioner saw physician assistant ("PA") Jacqueline Baggs for a diabetes follow up. Ex. 3 at 54. The record of this visit states that Petitioner did not have insurance and struggled with getting her medications. *Id.* Petitioner was also noted to be a "difficult historian". *Id.* Petitioner stated she was told 20 years before that she had a kidney condition, and wanted to resume medication for this. *Id.* Petitioner's weight, diabetes, and medication were also discussed. *Id.* at 54-55. A physical examination noted no cyanosis or edema in her extremities, but no musculoskeletal examination was done. *Id.* at 57-58. The record does not mention shoulder pain.

The following week (November 23, 2020), Petitioner underwent a dental examination. Ex. 3 at 49-52. Unsurprisingly, the record does not mention shoulder pain concerns.

Petitioner returned to PA Baggs the next month (December 21, 2020), now complaining of left shoulder pain, tenderness, and decreased range of motion ("ROM"). Ex. 3 at 44. She reported that her pain began "just after a flu vaccination 10/7/2020," which she now suspected had been given incorrectly. *Id.* She was in constant pain that she rated as three out of ten at the time of the appointment, ranging to seven or eight at worst. *Id.* The pain worsened with movement and radiated to her left upper arm, but not beyond. *Id.* She had tried home remedies such as Tylenol, warm compresses, ice and stretching. *Id.* On examination, her left shoulder was tender with limited ROM due to pain. *Id.* at 46. PA Baggs considered possible diagnoses, including rotator cuff pathology, adhesive capsulitis, and SIRVA. *Id.* at 45. Petitioner declined a specialist referral for financial reasons, and was referred for an MRI and given pain medication. *Id.*

Petitioner underwent a left shoulder MRI on January 7, 2021. Ex. 5 at 9. The MRI showed mild to moderate subacromial-subdeltoid bursitis, a partial thickness tear of the supraspinatus tendon, mild degenerative joint disease of the acromioclavicular joint, and a small shoulder effusion. *Id.*

A month later, and now four months after vaccination (February 9, 2021), Petitioner

saw orthopedic PA Michael Trimble for left shoulder pain which she "attribute[d] . . . to a flu shot she received on 10/07/2020." Ex. 6 at 2. Petitioner had purchased a shoulder brace, and tried ice with some relief and Tylenol with no relief. *Id.* Her symptoms were aggravated by overhead or extreme reaching with her left arm. *Id.* The physical examination was "a bit difficult" due to Petitioner's "discomfort with certain maneuvers." *Id.* at 3. She had positive impingement signs, mild pain with Speed's, and "significant" pain with the liftoff maneuver. *Id.* Petitioner's active ROM was noted as "limited."[3] *Id.* PA Trimble assessed Petitioner with rotator cuff tendinosis/impingement syndrome. *Id.* at 3. Petitioner could not afford prolonged physical therapy ("PT"), so a short course of PT for instruction in home exercises was recommended, along with a topical anti-inflammatory medication. *Id.* Petitioner was advised that her condition could take two to three months to resolve. *Id.*

Petitioner saw PA Baggs for a diabetes follow up on February 15, 2021. Ex. 3 at 31. Petiioner mentioned that she had seen an orthopedist and was using the topical anti-inflammatory and "starting PT". *Id.* No further information about Petitioner's shoulder pain was documented, and it appears that no shoulder treatment was provided. *Id.* Petitioner saw PA Baggs again on May 17, 2021, June 21, 2021, and August 25, 2021. *Id.* at 6-26. The records of these appointments do not mention shoulder concerns.

On February 16, 2022, Petitioner had a cardiology appointment to follow up on a heart condition that had been diagnosed in 2018. Ex. 9 at 9. Petitioner did not mention shoulder pain.

On February 28, 2023, Petitioner had another routine cardiology appointment. Ex. 9 at 3. She reported that she was now working for the postal service in a job that involved "lifting, twisting, [and] bending." *Id.* At the time of this appointment she was working part time, but she had worked up to 80 hours a week around the holidays. *Id.* Petitioner did not mention any shoulder concerns.

### B. Declarations

Petitioner submitted two declarations on her own behalf, and one from a friend.[4] Exs. 1, 2, 10. Petitioner states that she began to experience "twinges of pain" in her left shoulder when she reached over her head or behind her back within 48 hours of

---

[3] The record of this visit provides inconsistent ROM figures, without explanation. It states "[a]ctive range of motion is limited. There is 140 degrees of forward flexion, 120 degrees of abduction. This has improved to 160 degrees of forward flexion, 145 degrees of abduction . .. " Ex. 6 at 3. It is not clear whether these ROM numbers were all measured by PA Trimble on the date of this appointment, or if the lower numbers were from some other evaluation; nor is it clear what PA Trimble meant when he stated her ROM "had improved.". For purposes of this ruling, all that matters is that PA Trimble found Petitioner to have limited ROM, and I need not decide which numbers are correct.

[4] Although Petitioner labeled these exhibits as affidavits, they are not notarized. Nonetheless, they are acceptable as declarations. 28 U.S.C. § 1746.

3

vaccination. Ex. 1 at ¶ 7. Over the next month, she adjusted her routine to reduce her pain. *Id.* at ¶ 8. She used ice, an arm brace, topical creams, and Tylenol. *Id.*

Petitioner states that when she saw PA Baggs "[o]n November 17, 2020, [she] complained of left shoulder pain," specifying that it "began after the October 7, 2020 influenza shot and that I thought I had sustained a 'SIRVA' injury." Ex. 1 at ¶ 9. PA Baggs "appeared unaware" of SIRVA and did not offer any treatment other than diagnostic testing.[5]

Petitioner states that she was unable to attend PT as planned after her February 2021 orthopedic consultation due to financial limitations. Ex. 10 at ¶ 6. Instead, she did stretches and exercises at home and used a topical medication, but her arm pain continued. *Id.*

From February 9, 2021[6] to August 2021 (when Petitioner signed her first declaration), Petitioner states she experienced left shoulder pain and decreased ROM. Ex. 1 at ¶ 12. However, she states that she was not able to treat her injuries due to lack of health insurance and other financial limitations. *Id.* Her pain affected her daily activities and sleep, and resulted in right arm pain from overuse because she could not use her left arm. *Id.* at ¶ 14.

At Petitioner's May 17, 2021 appointment, she complained to PA Baggs that her left shoulder continued to bother her. Ex. 10 at ¶ 7. However, PA Baggs did not examine or treat her shoulder, recommending that she return to the orthopedist. *Id.* In May and June 2021, Petitioner tried to swing a golf club, but lacked the ROM needed to swing the club effectively and without pain. *Id.* at ¶ 8. By the end of summer 2021, however, she was feeling less pain and her mobility had improved. *Id.* As of May 2023, when she signed her supplemental declaration, she no longer experienced pain and ROM limitations in her left shoulder. *Id.* at ¶ 9.

Karen Young, a friend who has known Petitioner for five years and works as a registered nurse, submitted a declaration in support of Petitioner's claim. Ex. 2. Ms. Young states that she became aware of Petitioner's left shoulder injury "a few days after" vaccination. *Id.* at ¶ 5. Petitioner told Ms. Young that "her left shoulder was aching severely" and that she could not sleep or raise her arm to dress herself of put up her hair. *Id.* Over the next few months, Petitioner continued to complain of a burning sensation, pain, and limited mobility that affected her abilities to engage in her usual daily activities.

---

[5] Although this paragraph of Petitioner's declaration purports to describe her November 17, 2020 appointment, it appears to incorporate some parts of her later, December 2020 appointment. For instance, she notes the recommended diagnostic test, as well prescription pain medication – which were ordered at the December 2020 appointment.

[6] The declaration refers to "February 9, 2020 to present." Ex. 1 at ¶ 12. This is likely a typo, and should state February 9, 202*1*.

*Id.* at ¶ 7. Ms. Young states that Petitioner's pain and limitations continued, preventing Petitioner from being able to swing a golf club or play tennis, as of August 2021, when she signed the declaration. *Id.* at ¶ 8.

## II. The Parties' Arguments

### A. Onset

Petitioner argues that she has offered preponderant evidence that her shoulder pain began within 48 hours of vaccination. Petitioner's Motion for Ruling on the Record, filed April 12, 2024, at *10-16 (ECF No. 45) ("Mot."). Although the record of her November 2020 appointment is silent on shoulder pain, Petitioner asserts that she did in fact complain of shoulder pain at this time. Mot. at *11. And when she returned in December for an appointment specifically for her shoulder pain, she clearly reported that her pain began just after vaccination. *Id.* at *12. She told the orthopedist that her pain resulted from vaccination, and both Petitioner and her friend provided testimonial evidence supporting a finding that her pain began within 48 hours. *Id.* at 10-12.

Respondent disputes that Table onset has been established. Respondent's Response, filed July 12, 2024, at *6-8 (ECF No. 47) ("Resp."). Respondent cites *Taylor v. Sec'y of Health & Human Servs*., No. 16-403V, 2020 WL 6706078, at *17 (Fed. Cl. Spec. Mstr. Oct. 20, 2020) and *Nicholson v. Sec'y of Health & Human Servs*., No. 17-1416V, 2022 WL 14437541, at *25 (Fed. Cl. Spec. Mstr. Sept. 22, 2022) as suggesting a link between diabetes and shoulder impairments. *Id.* at *7-8. Due to this association, Respondent asserts that it is "highly unlikely that [PA] Baggs would have simply ignored shoulder complaints" at the November 2020 appointment as Petitioner asserts. *Id.* at *8.

Respondent adds that Petitioner's two declarations are "inconsistent with one another," noting that Petitioner's first declaration dated August 9. 2021 (Ex. 1) asserted that she continued to suffer limitations in dressing and grooming as of that date, while her May 18, 2023 declaration (Ex. 10) asserted that she had begun to regain mobility by the end of the summer of 2021. Resp. at *8.

Petitioner replies that Respondent ignores her December 2020 appointment, where Petitioner stated that her pain began just after vaccination, and that she though the vaccine was the cause of her pain. Petitioner's Reply, filed July 29, 2024, at *2 (ECF No. 48) ("Reply"). And when she saw an orthopedist, she related her pain to vaccination. Reply at *2. She adds that it is "not unusual for physicians, during the first month or so following a SIRVA, to believe the symptoms likely to resolve without intervention."[7] *Id.*

---

[7] Petitioner cites *Sender v. Sec'y of Health & Human Servs*., No. 20-172V, 2024 WL 3098567 (Fed. Cl. Spec. Mstr. May 21, 2024) in support of her argument that it is not uncommon for physicians to believe symptoms are likely to resolve without intervention. Reply at *2. However, *Sender* does not say this or involve a petitioner asserting that she reported concerns that were not recorded by a treater. Thus, the relevance of *Sender* – beyond demonstrating that onset may be found even with a treatment delay longer

### B. Severity

Petitioner argues that her shoulder pain persisted until August 2021. Mot. at *17-21. Although her last formal treatment occurred four months after vaccination, at that time she continued to have ROM deficits and significant enough pain to impede a physical examination. *Id.* at *19. She asserts that her MRI demonstrated a "significant SIRVA injury," as demonstrated by the findings of a partial thickness tear, bursitis, and edema. *Id.*

In February 2021, PA Trimble estimated that Petitioner's condition would take two to three months to resolve – which would mean April or May 2021, at or beyond the six-month mark. Mot. at *20. And Petitioner and Ms. Young testified that her pain continued until the date of their declarations in August 2021. *Id.* Petitioner asserts that she was unemployed without health insurance at the time of her SIRVA, making formal treatment unaffordable. *Id.* at *19-20 (citing *Reser v. Sec'y of Health & Human Servs.*, No. 20-0825V, 2023 WL 2535888, at *5, 2023 U.S. Claims LEXIS 429, at *12 (Fed. Cl. Spec. Mstr. Feb. 9, 2023) (citing a petitioner's lack of insurance as a reasonable explanation for why she delayed seeking formal medical treatment)).

Respondent argues that because Petitioner's formal treatment ended before the six-month mark, she "is therefore left to rely on conjecture and affidavit testimony." Resp. at *8-9. Respondent disagrees that Petitioner's MRI findings are related to vaccination. *Id.* at *9. And PA Trimble's statement that it would take two to three months to heal was an *estimate* – which is not sufficient to preponderantly establish that she experienced residual effects for more than six months.

Respondent emphasizes that Petitioner's medical records reflect no treatment of her shoulder beyond February 15, 2021. Resp. at *9. Her May and June 2021 records do not mention shoulder pain. *Id.* And by February 2023, Petitioner was working for the postal service lifting packages and working up to 80 hours a week without shoulder limitations. *Id.* Respondent argues that Petitioner relies solely on her own testimony and a single estimate from a health care provider to establish more than six months of residual effects – which is not sufficient. *Id.* at *9-10.

Petitioner replies that in similar cases, the severity requirement has been found met. Reply at *2-3. She characterizes her MRI and orthopedic evaluation as demonstrating a "moderate to severe SIRVA" – a characterization which I view as an overstatement – "with significant symptoms as of February 9, 2021." *Id.* at *3. She emphasizes that the examination was limited due to pain, and that PA Trimble's assertion that her symptoms would take two to three months to resolve was supported by the MRI

---

than is involved in this case – is not apparent, and unfortunately Petitioner did not provide a pinpoint cite or parenthetical explaining how she believes *Sender* is relevant.

and examination findings and was not conjecture. *Id.* Finally, Petitioner asserts that her medical records are "rife with references to her limited finances," making formal treatment difficult to manage. *Id.* at *4.

### III.    Legal Standards

Before compensation can be awarded under the Vaccine Act, a petitioner must preponderantly demonstrate all matters required under Section 11(c)(1), including the factual circumstances surrounding his or her claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Human Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Human Servs.,* No. 11-685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Human Servs.,* No. 90-2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). The Federal Circuit has "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021) (explaining that a patient may not report every ailment, or a physician may enter information incorrectly or not record everything he or she observes).

In addition to requirements concerning the vaccination received and the lack of other award or settlement,[8] a petitioner must establish that he or she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination he or she received. Section 11(c)(1)(C). The Vaccine

---

[8] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception and has not filed a civil suit or collected an award or settlement for his or her injury. Section 11(c)(1)(A)(B)(E).

7

Act further includes a "severity requirement," pursuant to which a petitioner demonstrate that they:

> (i) suffered the residual effects or complications of such illness, disability, injury, or condition for more than 6 months after the administration of the vaccine, or (ii) died from the administration of the vaccine, or (iii) suffered such illness, disability, injury or condition from the vaccine which resulted in inpatient hospitalization and surgical intervention.

Section 11(c)(1)(D).

"[T]he fact that a petitioner has been discharged from medical care does not necessarily indicate that there are no remaining or residual effects from her alleged injury." *Morine v. Sec'y of Health & Human Servs.*, No. 17-1013, 2019 WL 978825, at *4 (Fed. Cl. Spec. Mstr. Jan. 23, 2019); *see also Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014) ("a discharge from medical care does not necessarily indicate there are no residual effects"). "A treatment gap . . . does not automatically mean severity cannot be established." *Law v. Sec'y of Health & Human Servs.*, No. 21-0699V, 2023 WL 2641502, at *5 (Fed. Cl. Spec. Mstr. Feb. 23, 2023) (finding severity requirement met where petitioner sought care for under three months and had met physical therapy goals but still lacked full range of motion and experienced difficulty with certain activities, then returned to care nearly five months later reporting stiffness and continuing restrictions in motion); *see also Peeples v. Sec'y of Health & Human Servs.*, No. 20-0634V, 2022 WL 2387749 (Fed. Cl. Spec. Mstr. May 26, 2022) (finding severity requirement met where the petitioner sought care for four months, followed by fifteen month gap); *Silvestri v. Sec'y of Health & Human Servs.*, No. 19-1045V, 2021 WL 4205313 (Fed. Cl. Spec. Mstr. Aug. 16, 2021) (finding severity requirement satisfied where petitioner did not seek additional treatment after the five month mark.

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying Qualifications and Aids to Interpretation ("QAI") are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the

underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

(i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time-frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

## IV. Ruling on Entitlement

### A. Factual Finding on Onset

The record preponderantly supports a finding that Petitioner's shoulder pain likely began within 48 hours of vaccination. Petitioner first sought care for her shoulder pain approximately two and a half months post-vaccination. At this appointment, she complained of pain that started "just after" vaccination. Ex. 3 at 44. She added that she thought the vaccine had been given incorrectly, causing her pain. When she saw an orthopedist, she again related her pain to vaccination. Ex. 6 at 2.

Although the record of Petitioner's appointment with PA Baggs just over a month before is silent on shoulder pain, this does not defeat her claim. It is not uncommon for a SIRVA petitioner to delay seeking care in hope that their condition will resolve on its own.

*Baskin v. Sec'y of Health & Human Servs.*, No. 21-2207V, 2025 WL 1891826, at *7 (Fed. Cl. Spec. Mstr. June 2, 2025) ("treatment delay by itself does not undermine a favorable onset finding"); *Graczyk v. Sec'y of Health & Human Servs.*, No. 21-0376V, 2023 WL 4573868 (Fed. Cl. Spec. Mstr. June 16, 2023) (finding onset within 48 hours where Petitioner first sought care two months after vaccination).

In addition, the record of the November 2020 visit does not *affirmatively* demonstrate that Petitioner was not experiencing shoulder pain; rather, it is simply silent on the matter. And the remaining medical records support an onset close-in-time to vaccination. There are also the witness statements that corroborate this contention. Thus, I find that, more likely than not, Petitioner's shoulder pain began within 48 hours of vaccination.

Respondent's suggestion that PA Baggs would not have ignored shoulder complaints at the November 2020 visit due to a link between diabetes and shoulder impairments is speculative. Although the special master in *Nicholson* noted an increased risk of adhesive capsulitis in patients with *uncontrolled* diabetes (*Nicholson*, 2022 WL 14437541, at *25), Respondent has not asserted that Petitioner's diabetes was uncontrolled – likely because it appears that her diabetes *was in fact well-controlled*. *See* Ex. 3 at 42 (noting Petitioner's diabetes as well controlled). And the fact that diabetes can be associated with shoulder issues does not also mean that the failure to mention shoulder issues at a treatment event focused on diabetes undermines the existence of such potentially-related concerns.

### B. Statutory Severity Requirement

Petitioner sought care for her shoulder injury for just over four months. The last formal treatment she received was on February 9, 2021, when she saw PA Trimble. At this visit, limited ROM was documented. Ex. 6 at 3. Although no pain ratings were documented, the physical examination of her shoulder was noted as being difficult "due to the patient's amount of discomfort with certain maneuvers." *Id.* And she had positive impingement signs and significant pain with the liftoff maneuver. *Id.*

PA Trimble recommended formal PT along with an anti-inflammatory medication. Ex. 6 at 3. Petitioner explained that she could not afford prolonged PT, so PA Trimble recommended that she do a short PT course followed by home exercises. Petitioner explained that for financial reasons, she was unable to attend PT, but that she did home exercises and used topical medication. PA Trimble estimated that her condition would take two to three months to resolve. While this estimate does not by itself establish that Petitioner's condition continued for that time period, an educated estimate from a treating provider is compelling evidence that her condition was likely to continue. The record evidence of Petitioner's remaining symptoms and limitations in February 2021, supported by PA Trimble's estimate and the testimonial evidence, is sufficient to establish that more likely than not she experienced residual effects for more than six months.

This same record, however, is not supportive of a particularly "severe" SIRVA. And I do not find that Petitioner has established that her symptoms continued until August 2021. At best, they continued until at least mid-April 2021 – sufficient to satisfy the statutory severity threshold – but likely subsided shortly thereafter. I share Respondent's concerns about the incongruousness of Petitioner's declarations. One says her symptoms continued in August 2021, while the other says that her symptoms were resolving by the end of the summer in 2021. Petitioner's failure to reconcile these statements harms their credibility.

The record suggests that Petitioner's injury was on the milder side, *barely* meeting the statutory severity requirement, and resolving with only very limited conservative treatment. She was able to manage the pain on her own for over two months before seeking care. Under these circumstances, Petitioner's damages should be anticipated to be modest. Contemporaneously with this Ruling, a damages order is being issued directing Petitioner to serve a demand. Petitioner is encouraged to take my views on damages herein into consideration in preparing her demand.

### C. Factual Findings Regarding Remaining QAI Criteria for Table SIRVA and Other Entitlement Requirements

Respondent does not contest the remaining SIRVA QAI criteria, and I find that they are satisfied. There is no evidence that Petitioner had a pre-vaccination left shoulder condition, or another condition or abnormality, that would explain her symptoms after vaccination. Ex. 3. She exhibited reduced ROM, and her symptoms were limited to her left shoulder (where she received the flu vaccine). Ex. 6 at 2-3. The record also contains preponderant evidence that remaining requirements for entitlement are satisfied: she. received a covered vaccine in the United States (Exs. 7, 8) and has never received an award or settlement, or filed a civil action, for her vaccine-related injuries (Ex. 1 at ¶¶ 17, 18).

### Conclusion

Based on my review of the record as a whole, I find that it is more likely than not that the onset of Petitioner's shoulder pain occurred within 48 hours of vaccination, and that all other SIRVA Table requirements are met. I find that the statutory severity requirement is satisfied by preponderant evidence, as are other requirements for entitlement. Therefore, Petitioner's motion for a ruling on the record that she is entitled to compensation is **GRANTED**.

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master
